IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| LISTON SEWER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 04-76 |
| | : | |
| LIAT (1974) LTD. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                February 16, 2011

Defendant LIAT (1974) Ltd. (Liat) asks this Court to grant summary judgment in its favor, arguing Plaintiff Liston Sewer's discrimination claim fails because it arises from his attempted travel on an airplane operated by a foreign airline in a foreign country. Liat's motion shall be granted because there are no genuine disputes as to any material facts and Liat is entitled to judgment as a matter of law.[1]

**FACTS**[2]

---

[1] At the outset, this Court notes Sewer did not timely respond to Liat's summary judgment motion, which was filed on April 4, 2009. Sewer's response was due April 25, 2009. *See* Fed. R. Civ. P. 56(c)(1)(B). Liat twice agreed to extend the deadline for Sewer's response, but when Sewer's response was not filed by May 15, 2009, Liat refused to consent to a further extension. Sewer's counsel sought an extension from the court on May 15, 2009, and May 29, 2009, asserting on both occasions that she was too busy preparing motion in limine responses for other cases to compose a response to Liat's motion. Liat opposed these requested extensions and, on May 31, 2009, filed a motion asking its summary judgment motion be granted as unopposed. Sewer finally filed his response on June 2, 2009, despite not having received any extensions from the court. Because this response was untimely, this Court could grant Liat's summary judgment motion as unopposed. In the interest of completeness, however, this Court shall also address the motion's merits.

[2] Local Rule of Civil Procedure 56.1(b) requires a party responding to a summary judgment motion to address the facts upon which the movant relies by the number assigned to each fact by the movant. This Rule further requires the non-moving party to either agree that each fact stated by the movant is undisputed or demonstrate the basis for a dispute. Sewer has done neither. Instead of responding directly to Liat's statement of undisputed facts, Sewer turned Liat's factual recitation into an enumerated list of facts and either "admitted" or "denied" each assertion. When Sewer asserted a fact was "denied," he did not cite to any pleadings, answers to interrogatories, depositions, or other materials on file to support his contention that such fact was falsely asserted. Accordingly, this

Sewer is a Virgin Islands citizen who purchased a ticket for a Liat airline flight from Tortola, British Virgin Islands, to Antigua, scheduled to depart on July 28, 2002. On the day of his flight, Sewer arrived at the Tortola airport two hours before his scheduled departure time, checked in, and obtained a boarding pass and seat assignment. While waiting to board the plane, Liat made two announcements stating Sewer's flight would be delayed. When Sewer's plane arrived, Liat supervisor Ramona Moses expected it would be empty, but found eight passengers on board who planned to travel to Antigua.[3] Liat thus determined it could not accommodate all ticketed passengers on the flight to Antigua, and would have to reschedule flights for eight ticketed passengers waiting at the airport.

Moses decided to reschedule the flights of travelers whose final destination was Antigua, reasoning that it would be easier to accommodate these passengers on later flights than to reschedule itineraries of passengers who had connecting flights in Antigua. Based on this criteria, Moses told a Liat employee to hold back passengers whose final destination was Antigua, including Sewer.[4]

---

Court has experienced some difficulty in ascertaining which facts Sewer agrees are undisputed and the extent of his disagreement with any disputed facts. Where Sewer has merely "denied" a fact but has offered no evidence to support this denial and there is sufficient evidence to prove the fact's veracity, this Court will find there is no genuine dispute as to that fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (explaining that, although a party need not conclusively establish the existence of a disputed fact, a party must set forth "sufficient evidence supporting the claimed factual dispute" to allow the case to proceed to trial).

[3] Sewer disputes this fact, but does not direct the Court to any facts or information which suggest it is false. Instead, he admits that a Liat employee testified that eight unexpected passengers were present on the airplane, but states, "However, it is indisputed [sic] it is true as the procedures of Defendant require that the arriving station be information [sic] of the number of passengers that will be disembarking and the number that will be traveling on." Pl.'s Resp. to Def.'s Statement of Facts 3. This noted dispute, without evidence to substantiate it, does not create a "genuine dispute" as to the veracity of this fact.

[4] Sewer "denies" this fact, but again does not direct the Court to any evidence which suggests this was not the procedure Moses followed. Instead, Sewer merely argues if such selection criteria was used, it violated Liat's own policy regarding when to "bump" passengers from oversold flights.

Sewer was told he would have to take a later flight.

When the plane arrived, all of the waiting passengers, including Sewer, pushed past the boarding gate staff and boarded the plane. The seat assigned to Sewer was occupied and, when a flight attendant told passengers to take any available seat, Sewer remained standing because no other seats were open. Sewer became angry and yelled at Liat employees, "the plane is leaving with me or else the plane is not leaving. I'm going to get my seat." Pl.'s Resp. to Def.'s Statement of Material Facts 9. Because Sewer could not safely travel on the plane if he was not seated, he was asked to leave the aircraft. When Sewer refused to leave the plane, an off-duty police officer who was unaffiliated with Liat was called to escort him off. Sewer left voluntarily, although purportedly only to explain the situation to the officer. Once they were on the tarmac, the police officer, Bill Johnny, asked Sewer what had happened and Sewer became very upset and began yelling at Johnny. When Sewer heard the airplane closing its door, he attempted to run back onto the plane. Officer Johnny prevented Sewer from re-boarding by placing him in handcuffs and taking him to an airport holding cell where he was detained for ten to fifteen minutes before being released without charges. Sewer asserts he suffered injuries during this interaction with Officer Johnny, stating his wrists were

---

Sewer asserts Liat's policy requires Liat employees to first request volunteers to take a later flight and then, if no volunteers come forward, to reschedule the last travelers to check in for the flight.
     This Court's review of the evidence Sewer presented in support of this contention, however, does not compel the conclusion Sewer suggests. Liat's Overbooked Passengers policy, as submitted by Sewer, states that, when selecting passengers who will be involuntarily denied boarding on an overbooked flight, "the last [passenger] to check in may be used as a basis, however the amount of inconvenience that would be caused should also be considered before arriving at a decision." Pl.'s Resp. to Def.'s Statement of Facts 5 (quoting Liat's Airport and Customer Service Manual). Sewer has not thus established a genuine dispute regarding the selection criteria used by Moses to determine which passengers would be denied boarding, nor is there a factual dispute as to whether Moses was acting in accordance with Liat's policies in using this criteria.

bruised and swollen from the handcuffs.[5]

On December 11, 2002, Sewer filed the instant action against Liat in the District Court of the Virgin Islands St. Croix Division, asserting claims of discrimination[6], defamation, and intentional or negligent infliction of emotional distress. On June 10, 2004, Liat's first motion to dismiss was denied and the court transferred this case to the St. Thomas and St. John Division of the District Court of the Virgin Island. On July 6, 2007, Liat filed a second motion to dismiss for forum non conveniens, which was denied. On April 4, 2009, Liat filed the instant motion for summary judgment.

**DISCUSSION**

In reviewing Liat's motion, this Court considers all evidence in the light most favorable to Sewer. *See Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001) (instructing courts to "take the facts in the light most favorable to the nonmoving party" when reviewing a summary judgment motion). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the disputed evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

This Court need only address Sewer's discrimination claim, which has two fatal defects.[7]

---

[5] Sewer neither asserts nor provides evidence to suggest such injuries required medical treatment or caused him lasting pain.

[6] Sewer is a black West Indian with dreadlocks in his hair who believes in the underlying tenets of Rastafarianism. He asserts Liat discriminated against him on the basis of his race, origin, and beliefs.

[7] In his opposition to Liat's summary judgment motion, Sewer does not address the viability of his defamation or infliction of emotional distress claims. Therefore, the motion for summary judgment on these claims is unopposed, and summary judgment will be granted on both claims.

First, Sewer has presented no evidence to show he was discriminated against by Liat or its employees. Instead, it is apparent that, in removing Sewer from the flight to Antigua, Liat employees applied neutral selection criteria to remove the eight passengers whose flights could most easily be rescheduled. Second, and more importantly, even if Sewer had presented any evidence of discrimination, there is no legal basis by which he can recover in this Court for discrimination suffered in another country by agents of a foreign airline.[8]

"[R]ecovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking" in foreign territory is governed exclusively by the Montreal Convention and its predecessor, the Warsaw Convention.[9] *El Al Isr. Airlines v. Tsui Yuan Tseng*, 525 U.S. 155, 161 (1999) (citing Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 17, Oct. 12, 1929, 49 Stat. 3018)[10]; *see also Acevedo-*

---

[8] Sewer does not dispute that the flight which gives rise to his lawsuit originated and terminated in two foreign locations, the British Virgin Islands and Antigua. He also does not dispute that this flight was operated by a foreign company, Liat.
  Because all the facts relevant to this lawsuit took place in a foreign country and involved agents of a foreign airline, United States and Virgin Islands anti-discrimination laws do not apply. Moreover, even if Liat was an American corporation operating in American territory, Liat's claims based on Virgin Islands common law or territorial anti-discrimination laws are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, which provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law, related to . . . [the] service of an air carrier." Ticketing, boarding procedures, and baggage handling, are processes related to the service of an air carrier, in addition to transportation itself. *See Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 525 (5th Cir. 2002); *Cerquiera v. Am. Airlines, Inc.*, 520 F.3d 1, n.15 (1st Cir. 2008) (holding state discrimination claims fail under the preemption clause of the Airline Deregulation Act).

[9] The Montreal Convention is the successor to the Warsaw Convention, it became effective on November 4, 2003. *See* Convention for the Unification of Certain Rules for International Carriage by Air, opened for signature May 28, 1999, ICAO Doc. 9740 (entered into force Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45.

[10] The Warsaw Convention states, in relevant part:

> [t]he carrier shall be liable for damage sustained in the event of the death or

*Reinoso v. Iberia Lineas Aereas De Espana S.A.*, 449 F.3d 7, 11 (1st Cir. 2006). In order to support "the uniform regulation of international air carrier liability," the Warsaw Convention is the exclusive remedy for an aggrieved traveler against a foreign airline. *Tseng*, 525 U.S. at 161 ("[R]ecovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all") (internal alterations, quotation marks, and citation omitted).

Every court which has considered whether discrimination claims are preempted by the Warsaw Convention, has held in the affirmative. *See King v. Am. Airlines*, 284 F.3d 352, 361-62 (2d Cir. 2002) (explaining passengers' discriminatory bumping claims were preempted by the Warsaw Convention in the wake of the *Tseng* decision); *Waters v. Port Auth.*, 158 F. Supp. 2d 415, 429 (D.N.J. 2001) (granting summary judgment on discrimination claim because of Warsaw Convention preemption); *Turturro v. Cont'l Airlines*, 128 F. Supp. 2d 170, 180-81 (S.D.N.Y. 2001) (same); *Brandt v. Am. Airlines*, No. 98-2089, 2000 U.S. Dist. LEXIS 3164, at *4 (N.D. Cal. Mar. 13, 2000) (accord); *Gibbs v. Am. Airlines*, 191 F. Supp. 2d 144, 148 (D.D.C. 2002) (holding the need for uniformity under the Convention preempts the application of federal discrimination statutes); *Atia v. Delta Airlines*, 692 F. Supp. 2d 693, 703 (E.D. Ky. 2010) (accord). This Court agrees, and holds Sewer's discrimination claims are preempted by the Warsaw Convention.

Even if this Court construed Sewer's complaint as stating a cause of action under the Warsaw

---

> wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 17 of the Montreal Convention also establishes carrier liability for death or bodily injury to a passenger which takes place on board the aircraft or during the operations of embarking or disembarking.

6

Convention, Sewer's discrimination claim still fails because he cannot show the discrimination he claims constituted an "accident" or that he suffered "bodily injury" as a result of such accident. An "accident" under the Convention is "an unexpected or unusual event or happening that is external to the passenger." *Tseng*, 525 U.S. at 588 n.9. "[N]ot every identifiable incident or occurrence during a flight is an accident within the meaning of Article 17 even if the incident gives rise to an injury." *Air France v. Saks*, 470 U.S. 392, 405 (1984). Here, the only two events which may be arguably unexpected or unusual are that Sewer's seat was not available to him because it was occupied by another passenger, and Sewer was bumped from the flight and asked to take a later flight. These instances, however, do not qualify as accidents. "[A]n argument over seating is neither unexpected nor unusual." *Grimes v. Northwest Airlines, Inc.*, No. 98-4794, 1999 U.S. Dist. LEXIS 11754, at *9 (E.D. Pa. 1999). "Bumping" is by now a well-established airline industry practice "whereby passengers are denied seats due to intentional overselling, which is intended to minimize the number of empty seats due to cancellations." *Weiss v. El Al Isr. Airlines, Ltd.*, 433 F. Supp. 2d 361, 363 n.3 (S.D.N.Y. 2006) (citation omitted). Because neither occurrence was unusual or unexpected, no "accident" took place.

Additionally, Sewer did not suffer a compensable injury because, even if being "bumped" from his flight constituted an accident, this incident did not cause his injuries. To be compensable under the Warsaw Convention, Sewer must have suffered "death, physical injury, or physical manifestation of injury." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991). This injury must be proximately caused by an accident suffered "on board [the] aircraft or in the course of any of the operations of embarking or disembarking." *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 70 n.2 (1st Cir. 2000) (citation omitted). Sewer admits no Liat employee or agent caused him any injury. Instead, his minimal injury – "bruised and swollen" wrists – was caused by being handcuffed by an

7

off-duty police officer on the tarmac at the Tortola airport. This injury was not caused by Liat because it indisputably occurred after Sewer had left the plane, while he was talking to an off-duty police officer unaffiliated with the airline, and after he was out of Liat's area of control. *See Acevedo-Reinoso*, 449 F.3d at 12 (explaining that courts consider a number of factors when determining whether a passenger's injuries were incurred while "embarking or disembarking," including: (1) the passenger's activity at the time of injury, (2) his whereabouts when injured, and (3) the extent to which the carrier was exercising control at the time of injury).

Because Sewer's discrimination claim is preempted by the Warsaw Convention and because he has presented no evidence he was discriminated against in any event, this Court grants summary judgment in Liat's favor. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.